1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

VALERIE B.,

7                                           Plaintiff,

8            v.

9    Nancy A Berryhill, Acting Commissioner
     of Social Security Operations,

10                                          Defendant.

Case No. 2:18-cv-00076-RJB-TLF

REPORT AND
RECOMMENDATION

Noted for October 9, 2018

11

12          Plaintiff has brought this matter for judicial review of defendant's denial of her

13   applications for disability insurance and supplemental security income (SSI) benefits. This

     matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v.*

14   *Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

15          For the reasons set forth below, the undersigned finds that the Administrative Law Judge

16   ("ALJ") erred when he failed to properly consider the medical opinions of treating physician,

17   Deborah Roessler, M.D., and examining psychologists, Sylvia Thorpe, Ph.D., and Silverio

18   Arenas, Jr., Ph.D.  Because the ALJ's errors are harmful, the undersigned recommends that the

19   Court reverse defendant's decision to deny benefits and remand this matter for further

20   administrative proceedings.

21          **I.     FACTUAL AND PROCEDURAL BACKGROUND**

22

23          In May 2014, plaintiff filed applications for disability insurance benefits and

24   supplemental security income benefits alleging that she became disabled beginning January 25,

25

2013. Dkt. 8, Administrative Record ("AR") 225-226, 229-235. The claim was denied on initial administrative review and on reconsideration. AR 86-163. A hearing was held on July 22, 2016, before ALJ Eric S. Basse, at which plaintiff appeared and testified, as did vocational expert Roni Lenore. AR 56-85.

In a written decision dated September 22, 2016, the ALJ documents his analysis at each of the five steps of the Commissioner's sequential disability evaluation process. AR 31-55. At the first step, the ALJ considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). At the second step, the ALJ considers "the severity of the claimant's impairments. *Id.* The third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the ALJ considers the claimant's residual functional capacity ("RFC") "in determining whether the claimant can still do past relevant work" at step four, "or make an adjustment to other work" at step five. *Id.*

Steps one and two were resolved in plaintiff's favor. AR 36. The ALJ states that plaintiff had the following severe impairments: multiple endocrine neoplasia type II ("MEN 2A"), status-post cancer and thyroid resection, parathyroid implant, and removal of one adrenal gland; degenerative disc disorder of the left hand; obesity; major depressive disorder; and anxiety disorder. AR 36. At step three, the ALJ finds that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 37. The ALJ next considers plaintiff's RFC and finds at step four that plaintiff could not perform her past relevant work, but that at step five she could perform other jobs that

1   exist in significant numbers in the national economy, and therefore, she was not disabled at that

2   step. AR 46-47.

3        Plaintiff's request for review was denied by the Appeals Council on December 15, 2017,

4   making the ALJ's decision the final decision of the Commissioner, which plaintiff then appealed

5   in a complaint filed with this Court on January 18, 2018. AR 1-7; Dkt. 1, 4; 20 C.F.R. §§

6   404.981, 416.1481.

7        Plaintiff seeks reversal of the ALJ's decision and remand for further administrative

8   proceedings, arguing the ALJ's decision should be overturned because of error in evaluating the

9   medical opinion evidence of treating physician, Dr. Roessler, and examining psychologists, Drs.

10  Thorpe and Arenas. Dkt. 11.

11                          II.    DISCUSSION

12       The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error;

13  or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648,

14  654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

15  accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir.

16  2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

17  1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the

18  evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

19       If more than one rational interpretation may be drawn from the evidence, then the Court

20  must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).  "Where

21  there is conflicting evidence sufficient to support either outcome," the Court "must affirm the

22  decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart

23  v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court may not affirm by locating a quantum of

24  supporting evidence and ignoring the non-supporting evidence. *Orn,* 495 F.3d at 630.

25

1    The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

2    F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports,

3    and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the

4    decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified

5    by the ALJ are considered in the scope of the Court's review. *Id.*

6    A. ALJ's Evaluation of the Medical Opinion Evidence

7    Plaintiff challenges the ALJ's decision rejecting the opinions of treating physician Dr.

8    Roessler, and examining psychologists, Drs. Thorpe and Arenas. Dkt. 11.

9    Three types of physicians may offer opinions in Social Security cases: "(1) those who

10   treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the

11   claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant

12   (non-examining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). A treating

13   physician's opinion is generally entitled to more weight than the opinion of a doctor who

14   examined but did not treat the plaintiff, and an examining physician's opinion is generally

15   entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's

16   opinion may constitute substantial evidence if "it is consistent with other independent evidence

17   in the record." *Id.* at 830-31. An ALJ need not accept the opinion of a treating physician, "if that

18   opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record

19   as a whole." *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004); *see*

20   *also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter,* 242 F.3d

21   1144, 1149 (9th Cir. 2001).

22   Even when a treating or examining physician's opinion is contradicted, an ALJ may only

23   reject that opinion "by providing specific and legitimate reasons that are supported by substantial

24   evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of*

25

1    *Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all*

2    evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393,

3    1394-95 (9th Cir. 1984) (internal citation omitted) (emphasis in original). The ALJ must only

4    explain why "significant probative evidence has been rejected." *Id.*

5          "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing

6    nothing more than ignoring it, asserting without explanation that another medical opinion is more

7    persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his

8    conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v.*

9    *Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

10                     1. Dr. Roessler – Treating Physician

11          Plaintiff alleges the ALJ erred in rejecting the opinions of his treating physician, Dr.

12    Roessler. Dkt. 11 at 4-10.

13          In February 2014, Dr. Roessler completed a "Documentation Request for Medical or

14    Disability Condition" form. AR 587-89. Dr. Roessler diagnosed plaintiff with MEN 2A, a rare

15    genetic disorder that makes plaintiff susceptible to cancer formation, and that she may have a

16    "new tumor on adrenal gland." AR 587. Dr. Roessler opined that plaintiff's symptoms are

17    sporadic and unpredictable and "disabling when they come." AR 587. Dr. Roessler opined that

18    plaintiff's impairments would make her "unable to work" especially due to the unpredictable

19    nature of her diagnosis. AR 587. In June 2014, Dr. Roessler completed another disability form

20    opining that plaintiff remained disabled due to the "unpredictable episodes of high heart rate

21    [and] blood pressure[.]" AR 589-92.

22          Dr. Roessler's opinion was contradicted by the opinion of Gordon Hale, M.D., state

23    agency examiner, who opined that plaintiff is able to work with certain exertional,

24    environmental, and postural limitations. AR 135-36.  Therefore, the ALJ was required to provide

25

1   specific and legitimate reasons for rejecting Dr. Roessler's opinion. *Trevizo v. Berryhill*, 871

2   F.3d 664, 675 (9th Cir. 2017) (internal citation omitted); *Lester v. Chater*, 81 F.3d 821, 830 (9th

3   Cir. 1996).

4       The ALJ assigns "little weight" to the opinions of Dr. Roessler. AR 43. The ALJ reasons

5   that Dr. Roessler's opinions were primarily based on plaintiff's subjective complaints, not

6   supported by the evidence in the record, and plaintiff's symptoms were not sporadic enough to

7   prevent plaintiff from working. AR 43.

8       First, the ALJ discounts Dr. Roessler's opinions on the basis that her opinions were based

9   primarily on plaintiff's subjective complaints. AR 43. "[A]n ALJ may reject a treating

10  physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been

11  properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

12  (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v.

13  Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This is distinguishable from a situation where the

14  doctor provides his or her own observations in support of assessments and opinions. *See Ryan v.

15  Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not

16  provide clear and convincing reasons for rejecting an examining physician's opinion by

17  questioning the credibility of the patient's complaints where the doctor does not discredit those

18  complaints and supports his ultimate opinion with his own observations"); *see also Edlund v.

19  Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). "[W]hen an opinion is not more heavily based

20  on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting

21  the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of

22  Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)).

23

24

25

REPORT AND RECOMMENDATION - 6

1    Here, the ALJ fails cite to any specific evidence to support his conclusion. *See* AR 43.

2    Based on a review of the relevant record, Dr. Roessler did not discount plaintiff's complaints and

3    supported her opinion with diagnostic and laboratory testing, physical examination findings, past

4    medical history, family medical history, evaluations from other physicians, and her own medical

5    knowledge. *See* AR 587 and 590 (stating her opinions were supported by diagnostic testing and

6    laboratory testing, and attached to opinion at AR 587-621); 582-85 (evaluation from specialist,

7    Johnathan Stoehr, M.D., Ph.D.); 594-95, 600-01 (review of plaintiff's past medical history and

8    family medical history); 595, 600, and 602 (blood pressure and heart rate measurements); 1263,

9    1265 (elevated levels of norepinephrine and low epinephrine levels). Therefore, the ALJ's

10   decision to discount Dr. Roessler's opinions based on Dr. Roessler's reliance on plaintiff's self-

11   reports is not a specific and legitimate reason based on substantial evidence. *See Ryan v. Comm'r*

12   *of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

13   With respect to the ALJ's reasoning that Dr. Roessler's opinions are inconsistent with

14   plaintiff's longitudinal treatment record, AR 43, the record does not support the alleged

15   inconsistencies.[1] For example, the ALJ cites to treatment notes indicating that plaintiff's

16   hypertension was well-controlled, AR 43 (citing AR 716). Yet Dr. Roessler's clinical notes from

17   that visit actually describe that plaintiff's hypertension was "controlled today", diagnosed

18   plaintiff with "uncontrolled" hypertension, and noted that the plaintiff had a history of labile

19   pressures. AR 716.

20   The ALJ also points to evidence that imaging of plaintiff was generally normal or

21   unchanged since the alleged onset date. AR 43 (citing AR 595, 739, 1205, 1667). While these

22

23   _____

[1] Defendant does not challenge this rationale. The defendant argues that because the ALJ rejected Dr. Roessler's
24   opinions on the basis that the opinions relied on plaintiff's subjective complaints, and this conclusion of the ALJ was
     supported by substantial evidence, any other errors are harmless. Dkt. 12 at 2.

25

1    records show normal chest x-rays and EKGs, AR 595, 739, 1205, 1667, the record also reflects

2    that plaintiff's CT scan of her abdomen showed changes around the side of her left adrenal

3    gland; Dr. Roessler recommended an EEG and consulted with another physician who

4    recommended additional laboratory testing and referral to a physician who specializes in MEN

5    along with a "specialized nuclear uptake scan." AR 596.

6         In finding that Dr. Roessler's opinions were inconsistent with the treatment record, it

7    appears that the ALJ ignores this evidence and instead, isolates the statements that supported his

8    conclusion. "[I]t is an error for an ALJ to pick out a few isolated instances of improvement over

9    a period of months or years and to treat them as a basis for concluding that a claimant is capable

10   of working." *Garrison v. Colvin,* 759 F.3d 995, 1017 & n.23 (9th Cir. 2014) (citing *Holohan v.*

11   *Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (noting that a claimant's condition must be

12   evaluated "in the context of the overall diagnostic picture"). The ALJ's finding that Dr.

13   Roessler's opinions were inconsistent with the treatment record is not supported by substantial

14   evidence.

15        The ALJ references treatment notes indicating that plaintiff's symptoms were treated

16   conservatively. AR 43 (citing AR 650). Where the "record reflects that [plaintiff] responded

17   favorably to conservative treatment," yet failed to seek aggressive treatment, such findings

18   allowed the ALJ to make the "permissible inference" that the plaintiff's symptom of pain "was

19   not as all-disabling as he reported[.]" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir.

20   2008) (footnote omitted).

21        However, the ALJ cites treatment records that show Dr. Roessler recommended plaintiff

22   obtain additional laboratory tests, make an appointment with Virginia Mason Endocrine Clinic

23   related to her MEN 2A and labile blood pressure, and provided plaintiff with a refill of her

24

25

prescriptions. AR 649-650. The record, considered as a whole, also reflects that plaintiff already had surgery to remove one adrenal gland and her thyroid. AR 650. It is not clear to the Court how this course of treatment would be characterized routine or conservative, and there is no evidence in the record that more aggressive treatment was available or recommended to address symptoms of plaintiff's conditions.

Other district courts in the Ninth Circuit have been cautious in considering whether claimant's chosen or available treatment options are conservative or not aggressive enough. *See e.g. Snyder v. Colvin,* 2017 WL 1375690, at *12  n.44 (S.D. Cal. Apr. 17, 2017), *report and recommendation adopted sub nom., Snyder v. Berryhill,* 2017 WL 2578961 (S.D. Cal. June 14, 2017) (collecting cases) (*Boitnott v. Colvin*, 2016 WL 362348, at *4 (S.D. Cal. Jan. 29, 2016) (rejecting an ALJ's characterization of a claimant's treatment as "routine and conservative" in part because "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment" of the claimant's conditions); *Childress v. Colvin*, 2014 WL 4629593, at *12 n.2 (C.D. Cal. Sept. 9, 2014) (stating that "[t]here is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment," except for the use of non-prescription medications, which are "consistently viewed as 'conservative treatment' "); *Landaverde v. Colvin*, 2016 WL 4487828, at *5 (C.D. Cal. Aug. 28, 2016) ("There is no evidence in the record that more frequent or aggressive treatment was available to treat Plaintiff's conditions, and the ALJ was not qualified to draw his own inference regarding whether such treatment was available.").

In this case, the ALJ's analysis of plaintiff's course of treatment and characterization of her treatment as conservative is not sufficiently specific or supported by substantial evidence. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's

1   opinion on the ground that it was contrary to clinical findings in the record was "broad and

2   vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

3           Without citation to the record, the ALJ states that although the evidence contains details

4   that plaintiff's symptoms were sporadic, evidence does not detail that they were so sporadic to

5   prevent complaint from working. This conclusory reasoning is an insufficient basis for giving

6   little weight to Dr. Roessler's opinions. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.

7   1988) ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for

8   disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of

9   specificity" required to justify an ALJ's rejection of an opinion). Here, the ALJ fails to explain

10  this finding or cite to evidence relevant to how often plaintiff's symptoms were occurring, and

11  fails to show why a sporadic frequency is insufficient to support Dr. Roessler's opinions. *See*

12  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

13          Thus, the undersigned concludes that the ALJ erred by giving little weight to Dr.

14  Roessler's opinions. "[H]armless error principles apply in the Social Security context." *Molina v.*

15  *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not

16  prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability

17  determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir.

18  2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless

19  requires a "case-specific application of judgment" by the reviewing court, based on an

20  examination of the record made "'without regard to errors' that do not affect the parties'

21  'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396,

22  407 (2009)).

23

24

25

If the ALJ would have given appropriate weight to and properly considered Dr. Roessler's opinions, additional limitations may have been added to the RFC, as well as the hypothetical questions posed to the vocational expert ("VE"). For example, Dr. Roessler opined that plaintiff would not be able to maintain regular employment due to the unpredictable nature of her diagnosis. AR 587, 589-92. Therefore, the ALJ's error is not harmless and the undersigned recommends remanding for further consideration of Dr. Roessler's opinions.

## 2. Drs. Thorpe and Arenas – Examining Psychologists

Next, plaintiff alleges the ALJ erred in evaluating the opinion of examining psychologists, Drs. Thorpe and Arenas. Dkt. 11 at 11-17.

Dr. Thorpe examined plaintiff in May 2015. AR 1057-1065. Dr. Thorpe diagnosed plaintiff with somatic symptom disorder with predominant pain and major depressive disorder. AR 1063. Dr. Thorpe opined that plaintiff was "not able to work at this time." AR 1063.

Regarding plaintiff's mental functioning, Dr. Thorpe found that plaintiff was "somewhat slowed, and [her] working memory [was] limited." AR 1063. Dr. Thorpe observed that plaintiff had difficulty repeating digits backwards, confused her right and left, delayed recall was below average, pace of work was two to three times slower than average, and response latency was sometimes more than 15 seconds. AR 1063.

Dr. Arenas performed a psychological evaluation for the Washington State Department of Social and Health Services ("DSHS") in July 2015. AR 1066-71. Dr. Arenas diagnosed plaintiff with anxiety disorder, not otherwise specified, with generalized and post-traumatic stress features, chronic and severe and depressive disorder, not otherwise specified, with major features, chronic and severe. AR 1069.

Dr. Arenas opined that plaintiff has marked limitations[2] in her ability to understand, remember, and persist in tasks by following detailed instructions; perform routine tasks without special supervision; adapt to changes in a routine work setting; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and maintain appropriate behavior in a work setting. AR 1069-70. Dr. Arenas opined that plaintiff has severe limitations[3] in her ability to communicate and perform effectively in a work setting and complete normal workweek or work day without interruptions from her psychological symptoms. AR 1069-70. Dr. Arenas observed that plaintiff's thought process and content, memory, and concentration were not within normal limits. AR 1071.

The ALJ assigns little to no weight to the opinions of Drs. Thorpe and Arenas, reasoning that the opinions were based on plaintiff's subjective complaints and inconsistent with the record. AR 44-45.  The ALJ also reasoned that: Dr. Arenas saw plaintiff for a one-time examination, did not assess her functioning over time, Dr. Thorpe's opinion was internally inconsistent, and the opinion was based on plaintiff's physical impairments, not her mental limitations. AR 44.

a. Plaintiff's self-reports

The ALJ discounted the opinions of Drs. Thorpe and Arenas because their opinions were based primarily on plaintiff's subjective complaints.[4] AR 44. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible[]") (internal citation omitted); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th

---

[2] Defined as "significant limits on the ability to perform one or more basic work activity." AR 1069.

[3] Defined as "very significant limitation on the ability to perform one or more basic work activity." AR 1069.

[4] Defendant does not address this argument with respect to Dr. Thorpe. Dkt. 11 at 2-3.

1    Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining

2    physician's opinion by questioning the credibility of the patient's complaints where the doctor

3    does not discredit those complaints and supports his ultimate opinion with his own

4    observations").

5        With respect to Dr. Thorpe (as with the ALJ's assessment of Dr. Roessler's opinions), the

6    ALJ fails cite to any specific evidence to support his conclusion. *See* AR 44. Dr. Thorpe

7    supported her opinion by conducting a clinical interview, detailing plaintiff's self-reported

8    history, and conducting several psychological tests, including an objective mental status

9    examination. *See* AR 1062-63. Dr. Thorpe also reviewed plaintiff's medical records from

10   Squalicum Family Medicine (June 2014) and the treatment notes of Morgan Mitchell, LMHC

11   (2014-2015). AR 1058, 1063.

12       With respect to Dr. Arenas, the ALJ cited to evidence that Dr. Arenas' opinion was based

13   on plaintiff's answers to the Beck Depression Inventory and Beck Anxiety Inventory, reports of

14   seeing a deceased friend, and other symptoms. AR 44 (citing AR 1067-68). However, the Ninth

15   Circuit has clarified that professional assessment of mental illness is different from professional

16   assessment of physical illness, and observed that psychiatric evaluations necessarily analyze a

17   patient's self-reports:

18           [A]s two other circuits have acknowledged, "[t]he report of a psychiatrist should
             not be rejected simply because of the relative imprecision of the psychiatric
19           methodology." . . . Psychiatric evaluations may appear subjective, especially
             compared to evaluation in other medical fields. Diagnoses will always depend in
20           part on the patient's self-report, as well as on the clinician's observations of the
             patient. But such is the nature of psychiatry. . . . Thus, the rule allowing an ALJ to
21           reject opinions based on self-reports does not apply in the same manner to opinions
             regarding mental illness.

22   *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Blankenship v. Bowen*, 874 F.2d

23   1116, 1121 (6th Cir. 1989) (internal citations omitted)). "[W]hen mental illness is the basis of a

24

25

1  disability claim, clinical [findings] may consist of the diagnoses and observations of

2  professionals trained in the field of psychopathology." *Sanchez v. Apfel*, 85 F.Supp.2d 986, 992

3  (C.D. Cal. 2000); *see also Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (an opinion

4  based on clinical observations supporting a diagnosis of depression is competent [psychiatric]

5  evidence).

6          Therefore, plaintiff's answers to the Beck tests and Dr. Arenas' observations of plaintiff's

7  mood during the mental status examination are objective findings, which cannot be discounted as

8  a self-report. *Buck*, 869 F.3d at 1049 (9th Cir. 2017) (finding a clinical interview and mental

9  status evaluation to be "objective measures" that "cannot be discounted as a 'self-report'").

10         Regarding plaintiff's report that she saw a deceased friend, Dr. Arenas noted (in the

11 thought process and content portion of the mental status examination) that plaintiff was not

12 delusional, thus, it is not clear that Dr. Arenas relied on plaintiff's report of seeing a deceased

13 friend in his assessment of plaintiff's limitations. AR 1071. With respect to the ALJ's finding

14 that Dr. Arenas' opinion is based on plaintiff's "other symptoms", AR 44, the ALJ fails to

15 explain what evidence he is referring to or how such evidence shows that Dr. Arenas' opinion is

16 based on plaintiff's self-reports.

17         Thus, the record demonstrates that Drs. Thorpe and Arenas did not base their medical

18 assessments more heavily on plaintiff's self-reported symptoms than on objective medical

19 testing. Rather, Drs. Thorpe and Arenas provided opinions based on their observations, the

20 objective results of psychological testing, a review of medical records, as well as plaintiff's self-

21 reported symptoms.

22              b. Inconsistency with the record

23

24

25

1    The ALJ also states that the opinions of Drs. Thorpe and Arenas were inconsistent with

2    the record. AR 44. However, the ALJ's determination is not supported by substantial evidence.

3    The ALJ points to treatment notes that plaintiff did not start medication to treat her depression or

4    anxiety until November 2013, AR 44 (citing AR 698), and therapy notes that plaintiff was

5    advised to engage in stress reduction, AR 44 (citing AR 1038). However, the ALJ failed to

6    provide his interpretation of the evidence and did not provide an explanation as to why the

7    opinions of Drs. Thorpe and Arenas are inconsistent with this evidence. Here, "[the ALJ] merely

8    states that the objective factors point toward an adverse conclusion and makes no effort to relate

9    any of these objective factors to any specific medical opinions and findings he rejects. This

10   approach is inadequate." *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

11   For example, the fact that plaintiff did not start medication until November 2013 or that

12   plaintiff was advised to engage in stress reduction does not appear to be inconsistent with Dr.

13   Thorpe's opinion that plaintiff is  unable to work, AR 1063, nor would it be inconsistent with Dr.

14   Arenas' opinion that plaintiff has severe limitations in in her ability to communicate and perform

15   effectively in a work setting and complete a normal workweek or work day without interruptions

16   from her psychological symptoms, AR 1069-70.  To the extent the ALJ is relying on such

17   evidence for the idea that plaintiff failed to seek treatment, the ALJ does not discuss evidence

18   that plaintiff had a good reason for failing to seeking treatment -- she was uninsured and trying to

19   obtain insurance coverage in November 2013. AR 565, 697; *Regenniter v. Commissioner of Soc.*

20   *Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

21   The ALJ states that the plaintiff had conservative treatment for her mental impairments.

22   AR 44 (citing AR 1197). The record reflects that plaintiff was prescribed several anti-depression

23   and anti-anxiety medications and was advised to continue with counseling. AR 1197.  However,

24

25

1    there is no evidence in the record that this course of treatment was in fact conservative. *See e.g.*

2    *Boitnott v. Colvin*, 2016 WL 362348, at *4 (S.D. Cal. Jan. 29, 2016) (rejecting an ALJ's

3    characterization of a claimant's treatment as "routine and conservative" in part because "[t]here

4    was no medical testimony at the hearing or documentation in the medical record that the

5    prescribed medication constituted 'conservative' treatment" of the claimant's conditions);

6    *Childress v. Colvin*, 2014 WL 4629593, at *12 n.2 (C.D. Cal. Sept. 9, 2014) (stating that "[t]here

7    is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment," except

8    for the use of non-prescription medications, which are "consistently viewed as 'conservative'

9    treatment' ").

10          The ALJ also states that the opinions of Drs. Thorpe and Arenas were inconsistent with

11   "repeated observations of the claimant's normal mood and affect[,]" and that other treating

12   sources in 2015 noted that plaintiff's mental status functioning was normal. AR 44 (citing AR

13   582, 634-719, 801, 930, 980, 1018, 1024, 1079, 1092, 1201, 1317, 1456-1490). Yet the ALJ does

14   not explain how this evidence contradicts the opinions of Drs. Thorpe and Arenas.  Neither

15   plaintiff's normal mood and affect, nor the fact that plaintiff was alert, cooperative and oriented,

16   would be inconsistent with the findings of Drs. Thorpe and Arenas, which identified plaintiff's

17   cognitive deficits – memory, concentration, and pace of work. AR 1063, 1071. The ALJ does not

18   include citations to the comprehensive mental status examinations or other similar objective

19   testing that was completed during the office visits. All of the treatment notes cited by the ALJ are

20   related to treatment of plaintiff's physical symptoms. *See* AR 582, 634-719, 801, 930, 980, 1018,

21   1024, 1079, 1092, 1201, 1317, 1456-1490.

22          Therefore, the Court finds this is not a specific and legitimate reason supported by

23   substantial evidence to reject the opinions of Drs. Thorpe and Arenas.

24

25

1
2

   c. Dr. Thorpe's opinion – internal inconsistencies; physical limitations rather than

   mental impairments

3
4
5
6
7

  The ALJ states that Dr. Thorpe's opinion was internally inconsistent and based on plaintiff's physical impairments, not mental limitations. AR 44. Internal inconsistencies within a physician's report may constitute relevant evidence in judging the weight to be attributed to that report. *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of a medical opinion that was internally inconsistent).

8
9
10
11
12
13
14
15
16
17
18
19
20

  The ALJ concluded that plaintiff's Global Assessment Functioning (GAF) score of 25 is inconsistent with Dr. Thorpe's observation that plaintiff would be able to handle and manage her own funds. AR 44 (citing AR 1063). "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). A GAF score of 21 to 30 indicates: "Behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed.) (DSM IV). However, standing alone, GAF scores are not determinative of the severity of mental impairments for purposes of social security disability claims. *See* 65 Fed.Reg. 50746, 50764–65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings.").[5]

21
22
23
24
25

---

[5] The GAF was not included in the Diagnostic and Statistical Manual V (DSM V) because of a "conceptual lack of clarity" and "questionable psychometrics in routine practice." DSM V at 16 (5th Ed. 2013).

1    Here, the ALJ does not explain how plaintiff's GAF score is directly correlated with her

2    ability to manage funds, and it is not clear to the Court that plaintiff's ability to manage her own

3    funds is inconsistent with "[b]ehavior is considerably influenced by delusions or hallucinations

4    or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly

5    inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in

6    bed all day; no job, home, or friends.)." DSM IV at 34. Thus, the ALJ's rationale that the GAF

7    score is inconsistent with her ability to manage her own funds, without more, is not sufficiently

8    specific and legitimate to discount Dr. Thorpe's opinion.

9    The ALJ also notes that Dr. Thorpe's opinion was inconsistent with her observations that

10    plaintiff was able to spell "world" forwards and backwards, and perform serial 3s and 7s. AR 44

11    (citing AR 1062). However, Dr. Thorpe found that plaintiff was two to three times slower than

12    average in her ability to subtract serial 3s and serial 7s from 100. AR 1062. Dr. Thorpe also

13    found that plaintiff became confused with multiple pieces of information, her pace of work was

14    significantly slower than average, and plaintiff tried hard to be organized, but she appeared to

15    have cognitive problems. AR 1062. The ALJ fails to explain why or how Dr. Thorpe's opinion is

16    contradicted by this evidence, and this falls short of the "specific and legitimate reasons"

17    required to reject Dr. Thorpe's opinion. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir.

18    1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical

19    findings in the record was "broad and vague, failing to specify why the ALJ felt the treating

20    physician's opinion was flawed").

21    The ALJ also states that Dr. Thorpe's opinion was based on plaintiff's physical

22    impairments, instead of her mental impairments. AR 44. However, Dr. Thorpe provided

23    objective findings from the mental status examination that plaintiff's mental functioning was

24

25

1  slowed, her working memory was limited, and plaintiff's pace of work is slower than average,

2  which all support her finding that plaintiff has mental limitations in addition to any physical

3  limitations. AR 1062-63. Dr. Thorpe discussed these findings related to plaintiff's mental

4  impairments in concluding that she is unable to work. AR 1063. Thus, the ALJ's finding is not

5  supported by substantial evidence.

6              d. Dr. Arenas opinion - One-time assessment

7        The ALJ found that Dr. Arenas' opinion was based on a one-time assessment, and he did

8  not assess plaintiff's functioning over time. AR 44. In order to invalidate the opinion of an

9  examining physician that is contradicted by other evidence, the ALJ was required to state

10  specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v.*

11  *Chater,* 81 F.3d 821, 830 (9th Cir. 1996) (internal citations omitted). Here, the ALJ's decision

12  lacks any substantive explanation as to why Dr. Arenas' one-time assessment is a specific and

13  legitimate reason to discount his opinion. If the ALJ could reject an opinion simply because it

14  was based on a one-time assessment and not for the purpose of seeking treatment, almost every

15  examining opinion could be rejected for this reason. *See Williams v. Colvin*, 24 F. Supp. 3d 901,

16  914 (N.D. Cal. 2014) ("The fact of a one-time examination, without any analysis or assessment

17  as to the nature and quality of that examination, is not a sufficient basis for the ALJ's decision to

18  reject Dr. Johnson's opinion."). Without more, this is not a specific and legitimate reason

19  supported by substantial evidence to discredit Dr. Arenas' opinion.

20        Moreover, Michael Regets, Ph.D. and Dr. Hale only reviewed plaintiff's medical records,

21  and did not conduct any examinations. AR 88-101, 102-115, 118-135, 136-153. The ALJ does

22  not discredit their opinions on that basis. AR 43, 45. Since Drs. Hale and Regets did not examine

23  plaintiff, the frequency of examination does not provide a legitimate basis for giving Dr. Arenas'

24

25

opinion less weight. *See* 20 C.F.R. §§ 404.1527(c)(i), 416.927(c)(i) (citing the "frequency of examination" as one factor used to weigh medical opinions); *Losorelli v. Colvin,* 2015 WL 4366214, at *3 (C.D. Cal. July 16, 2015).

B. Remedy

Plaintiff seeks remand for further administrative proceedings. Dkt. 11. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018) (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014) (If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings.); *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration.).

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the opinions of Drs. Roessler, Thorpe, and Arenas. Accordingly, the undersigned recommends remanding this case for further administrative proceedings. Specifically, on remand the Commissioner shall re-evaluate the medical evidence, including the opinions of Drs. Roessler, Thorpe and Arenas, plaintiff's residual functional capacity, plaintiff's ability to perform his past relevant work, and, if necessary, plaintiff's ability to perform other jobs existing in significant numbers in the national economy. Plaintiff has not challenged the ALJ's credibility finding, and the ALJ need not reconsider that finding.

III.    CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined plaintiff to be not disabled, and remand this matter for further administrative proceedings.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **October 9, 2018** as noted in the caption.

Dated this 25th day of September, 2018.

Theresa L. Fricke
United States Magistrate Judge